**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Altec Capital Services LLC,<br><br>Plaintiff,<br><br>v.<br><br>Maximus Tree Works LLC, et al.,<br><br>Defendants. | No. CV-25-00203-PHX-ROS<br><br>**ORDER** |

Plaintiff filed a Motion for Default Judgment as to both Defendants Maximus Tree Works LLC ("Maximus") and Johnnie Morales ("Morales") (collectively, "Defendants") (Doc. 15). Defendants have not filed a response. For the reasons set forth below, the Court will grant the Motion and direct entry of default judgment against Defendants in the amount of $3,856,152.71.

## BACKGROUND

Because the Clerk entered default, the Court will take the Complaint's factual allegations as true. *See Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977) (stating that upon default, a complaint's allegations are taken as true, except those relating to damages).

Plaintiff filed this action seeking damages against both Defendants and replevin against Defendant Maximus arising out of Defendant Maximus' alleged breach of a lease agreement and Defendant Morales' breach of a guaranty agreement. (*See* Doc. 1, "Compl."). Plaintiff is an equipment finance and leasing business headquartered in

Birmingham, Alabama. (Compl. ¶ 8). Maximus engages in the trade of tree health, pruning, and removal and is headquartered in Arizona. (*Id.* ¶¶ 9-10). Morales, an individual who resides in Arizona, is the sole member of Maximus. (*Id.* ¶ 11).

In December 2019, Defendants approached Plaintiff about financing equipment for Maximus' business. (*Id.* ¶¶ 12-13). Between June 2020 and August 2023, Plaintiff and Maximus entered into a series of leases (collectively, "Lease Agreement") to provide Maximus with the financing of various equipment ("Equipment") for its business. (*Id.* ¶¶ 23, 28, 33, 38, 43, 48, 53, 58, 63, 68, 73, 78, 83, 88, 93, 98, 102). In connection with the Lease Agreement, Morales entered into a Guaranty Agreement whereby he personally guaranteed prompt payment of all amounts due under the Lease Agreement. (*Id.* ¶ 14). On or about June 24, 2020, Plaintiff filed a UCC Financing Statement for the Equipment ("2020 UCC Financing Statement"). (*Id.* ¶ 18).

In February 2024, payment in the amount of $85,584.27 was due under the Lease Agreement across all leases. (*Id.* ¶ 106). On or around May 7, 2024, Plaintiff notified Defendants of the default and terminated the Lease Agreement. (*Id.* ¶ 107). On June 28, 2024, Plaintiff received a payment of $50,000 that was applied to the balance from February 2024 and, to the extent possible, March 2024, but this did not sufficiently cover the then required balance due and owing. (*Id.* ¶ 109). On or about December 17, 2024, Plaintiff provided Defendants with the demand for payment to which Defendants did not respond. (*Id.* ¶¶ 110, 112). Plaintiff alleges Defendants have not paid any amounts owing under the Lease Agreement since July of 2024, and have not paid monthly payment obligations due since March of 2024. (*Id.* ¶ 113). Under the terms of the Lease Agreement, upon default, Plaintiff may pursue all rents, and other payments or damages (including attorneys' fees and costs) due and owing under the Lease Agreement. (*Id.* ¶ 115). Plaintiff may also pursue the return of the Equipment as payment for damages (including attorneys' fees and costs) due and owing under the Lease Agreement. (*Id.* ¶ 116).

On January 22, 2025, Plaintiff filed this action on three counts. First, Plaintiff seeks a claim for judgment against Maximus for breach of the Lease Agreement in the amount

of $4,165,952.71. (*Id.* ¶¶ 117-122). Second, Plaintiff seeks a claim for judgment against Morales for breach of the Guaranty Agreement in the amount of $4,165,952.71. (*Id.* ¶¶ 123-28). Third, Plaintiff seeks replevin of the Equipment against Maximus. (*Id.* ¶¶ 129-135). Defendants were personally served on January 27, 2025. (Docs. 7, 8). Defendants failed to file an Answer or otherwise respond within the response deadline.

The following facts are derived from the declaration of Ralph B. Griswold III, Plaintiff's Managing Director. (*See* Doc. 15-1). On or about January 31, 2025, Plaintiff learned that a third party was in possession of six pieces of the Equipment and that third party turned over those pieces of the Equipment to Plaintiff ("Returned Equipment"). (Doc. 15-1 ¶ 32). Plaintiff also notified Defendants concerning the Plaintiff's receipt of these pieces of Equipment. (Doc. 15-1 ¶ 33). On February 26, 2025, Plaintiff sent Defendants a notice of sale letter regarding the possession of the equipment and Plaintiff's intent to sell the Returned Equipment (the "Notice Letter"). (*Id.*). Defendants did not respond to the Notice Letter. (Doc. 15-1 ¶ 34). Plaintiff proceeded with a sale of certain pieces of the Returned Equipment and recovered $309,800.00 for the sale of the Returned Equipment with the VIN numbers 1FVACWFD4RHVA4431 and 1FVACWFD0RHVA4426, and applied the proceeds to the outstanding balance. (Doc. 15-1 ¶ 35). Griswold states Plaintiff is proceeding with sale arrangements for other items of the Returned Equipment and would offset its balance and partially satisfy any judgment based on future sales of the collateral. (*Id.*). Griswold further states Maximus is believed to be detaining some of the Equipment, excluding the Returned Equipment, at the address of 19637 Spring Gulch Rd., Anderson, California, but it is unclear where other pieces are currently located. (Doc. 15-1 ¶ 36).

On February 26, 2025, the Court issued an order to show cause why this action should not be dismissed for failure to prosecute. (Doc. 11). On February 28, 2025, Plaintiff filed an application for entry of default judgment against Defendants (Doc. 12), and the Clerk entered default on March 3, 2025 (Doc. 14). Plaintiff filed this Motion for Default Judgment on March 17, 2025. Eight days later on March 25, 2025, Defendants filed an

Answer to the Complaint. (Doc. 16). On April 9, 2025, the Court issued another order directing Defendants to show cause not later than April 14, 2025 why default judgment should not be entered against them. (Doc. 17). The order warned, "[f]ailure to do so will result in Default Judgment being entered with no further warning and an award of attorneys fees and costs." (*Id.* at 2).

## DEFAULT JUDGMENT

Once default is entered, the Court may enter default judgment under Rule 55(b). Deciding to grant default judgment is discretionary and the Court must consider: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the amount in controversy; (5) the possibility of factual dispute; (6) whether the default was due to excusable neglect; and (7) the strong preference to decide cases on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986).

### I.   Factor (1): Prejudice to Plaintiff

Defendants failed to respond to the Complaint within the timeframe set forth in the Federal Rules of Civil Procedure. Only after Plaintiff applied for default, the Clerk entered default, and Plaintiff filed this Motion for Default Judgment, did Defendants file their Answer. Despite this, Defendants failed to show cause in response to the Court's Order and failed to respond to this Motion or otherwise move to set aside default. Defendants have shown a pattern of failing to respond. Without Defendants' active participation in this case, Plaintiff has no obvious alternative recourse without a judgment and thus would suffer prejudice. This factor weighs in favor of default judgment.

### II.   Factors (2) and (3): Merits of the Claim and Sufficiency of the Complaint

The second and third *Eitel* factors, taken together, require courts to consider whether Plaintiffs have stated a claim on which they may recover. *See PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002); *Danning v. Lavine*, 572 F.2d 1386, 1388–89 (9th Cir. 1978). "Of all the *Eitel* factors, courts often consider the second and third factors to be the most important." *Trident Invest. Partners Inc. v. Evans*, No. CV-20-01848-PHX-DWL, 2021 WL 75826, *3 (D. Ariz. Jan. 8, 2021) (quoting *Vietnam Reform*

*Party v. Viet Tan-Vietnam Reform Party*, 416 F. Supp. 3d 948, 962 (N.D. Cal. 2019)). In considering these factors, the complaint's factual allegations are taken as true, but Plaintiffs must establish all damages sought. *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977). For the reasons below, these factors weigh in favor of default judgment on all claims against Defaulted Defendants.

### A. Breach of Contract

Counts I and II of the Complaint are breach of contract claims. The first, against Maximus concerning the Lease Agreement, and the second, against Morales concerning the Guaranty Agreement. In Arizona, "[t]o state a breach of contract claim, a plaintiff must allege that (1) a contract existed, (2) it was breached, and (3) the breach resulted in damages." *Steinberger v. McVey ex rel. Cnty. of Maricopa*, 318 P.3d 419, 434 (Ariz. Ct. App. 2014). Through the Complaint and declaration of Mr. Griswold, Plaintiff has alleged the existence of both the Lease Agreement (Doc. 15, Ex. A) and the Guaranty Agreement (Doc. 15, Ex. B) (Compl. ¶¶ 31-100). The Complaint also alleged Defendants' breaches of the agreements by failing to pay the amounts due. (*Id.* ¶¶ 103-16). And it set forth the damages suffered by Plaintiff as a result of those breaches. (*Id.* ¶¶ 121, 122, 127, 128). Accepting Plaintiff's allegations as true, they are sufficient to support both breach of contract claims against Maximus and Morales.

### B. Replevin

Count III of the Complaint is a claim for replevin as to the Equipment in the possession, custody, or control of Maximus. In Arizona, a plaintiff is entitled to a writ of replevin if it can show: (1) it is lawfully entitled to possession of the property; (2) the property is wrongfully detained by the defendant; (3) the value of the property; and (4) the property has not been seized under any process. A.R.S. § 12-1301; *see also Rucci v. JP Morgan Chase Bank*, 2015 WL 11118121, at *3 (D. Ariz. Jan. 20, 2015). Again, via the Complaint Mr. Griswold's declaration, Plaintiff has established that it is entitled to possession under the Lease Agreement because of Maximus' default, and Maximus is wrongfully detaining the Equipment. (Compl. ¶¶ 130-31). Plaintiff has also pled that the

current fair market value of the Equipment as $3,344,000.00, and the Equipment has not been taken or seized under any other process. (*Id.* ¶¶ 133-34).

Since filing the Complaint, Mr. Griswold avers certain pieces of the Equipment were returned to Plaintiff by a third party, without seizure under any legal process (Doc. 15-1 ¶ 32), but Plaintiff still seeks replevin as to the remaining Equipment so that Plaintiff may establish that it is lawfully entitled to possession and sell the Equipment to recover its damages. Accepting Plaintiff's allegations as true, they are sufficient to support a claim for replevin against Maximus.

## III. Factor (4): Amount in Controversy

This factor requires the court to consider the amount of money at stake in relation to the seriousness of Defendants' conduct. *PepsiCo*, 238 F. Supp. 2d at 1176. Plaintiff seeks $3,856,152.71 in damages, which constitutes the balance of the amount due and owing to Plaintiff under the Lease Agreement, secured by the Guaranty Agreement ($4,165,952.71, the original amount owed to Plaintiff sought in the Complaint, minus $309,800.00, the funds recovered for the sale of the Returned Equipment). (Doc. 15 at 8). "When the money at stake in the litigation is substantial or unreasonable, default judgment is discouraged." *Zekelman Indus. Inc. v. Marker*, 2020 WL 1495210, *4 (D. Ariz. Mar. 27, 2020) (quoting *Bd. of Trustees v. Core Concrete Const., Inc.*, 2012 WL 380304, *4 (N. D. Cal. 2012)). While this sum is substantial, it is also reasonable to the value of the contracts especially because Plaintiff is not claiming punitive damages or other special damages. (Doc. 15 at 7). This factor is neutral.

## IV. Factor (5): Dispute Concerning Material Facts

In the Answer, the vast majority of Defendants' responses to Plaintiff's allegations state Defendants "have insufficient information to determine whether the allegation contained therein is true or false" and therefore Defendants deny each allegation. (*See* Doc. 16). Defendants' denials create a basic dispute concerning material facts that weigh against entering default judgment. However, because the Court is without specific facts or evidence beyond Defendants' blanket denials, this factor is not particularly probative of

whether default judgment is appropriate. Thus, this factor is neutral.

## V. Factor (6): Excusable Neglect

Defendants failed to demonstrate excusable neglect. While they did eventually file an Answer after Plaintiff filed the instant Motion, Defendants failed to oppose the Motion or otherwise move to set aside the default. It is unclear why Defendants filed an untimely Answer and why they failed to oppose the Motion despite the Court's warning that default judgment would be entered if Defendants do not show cause by April 14, 2025. Despite being represented by counsel, Defendants neglected to provide an explanation for their failure to follow Court rules and orders. This factor supports default judgment.

## VI. Factor (7): Policy Favoring Judgment on the Merits

The final *Eitel* factor generally weighs against default judgment. *See Zekelman Indus. Inc.*, 2020 WL 1495210, at *4. It stems from "the general rule that default judgments are ordinarily disfavored" and "[c]ases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472 (citing *Pena v. Seguros La Comercial, S.A.*, 770 F.2d 811, 814 (9th Cir. 1985)). However, "the mere existence of Fed. R. Civ. P. 55(b) indicates that 'this preference, standing alone, is not dipositive.'" *PepsiCo*, 238 F. Supp. 2d at 1177 (quoting *Kloepping v. Fireman's Fund*, 1996 WL 75314, at *3 (N.D. Cal. Feb. 13, 1996). While Defendants have failed an Answer, the Court is unable to reach the merits of this case without further progression of the case, which is stifled by Defendants' failure to show cause or oppose this Motion. Therefore, this final factor weighs against granting default judgment.

## VII. Conclusion

Taken together, the *Eitel* factors support granting default judgment against both Defendants.

## DAMAGES

As noted above, a movant for default judgment must establish all damages sought in the Complaint. *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977). "[A] default judgment for money may not be entered without a hearing unless the amount

claimed is a liquidated sum or capable of mathematical calculation." *Davis v. Fendler*, 650 F.2d 1154, 1161 (9th Cir. 1981). Plaintiff seeks compensatory damages in the sum of $3,856,152.71.

Plaintiff attaches 16 agreements for equipment leasing, which collectively constitute the Lease Agreement. (Doc. 15, Ex. A). Paragraph 18 of each agreement calls for acceleration of payments in the event of default with an interest rate of 1.75% per annum. The Guaranty Agreement provided Morales was a guarantor on the amounts owed from Maximus to Plaintiff. (Doc. 15, Ex. B). $3,856,152.71 represents the balance of the amount due and owing to Plaintiff under the Lease Agreement, secured by the Guaranty Agreement ($4,165,952.71, the original amount owed to Plaintiff sought in the Complaint, minus $309,800.00, the funds recovered for the sale of the Returned Equipment). Thus, Plaintiff has adequately established damages.

Accordingly,

**IT IS ORDERED** Plaintiff's Motion for Default Judgment (Doc. 15) is **GRANTED**. The Clerk of Court is directed to enter judgment in favor of Plaintiffs and against Defendants Maximus Tree Works LLC and Johnnie Morales in the amount of $3,856,152.71 in damages. This amount shall be subject to post-judgment interest at the applicable federal rate pursuant to 28 U.S.C. § 1961(a).

**IT IS FURTHER ORDERED** Plaintiff may file a motion for attorneys' fees pursuant to LRCiv 54.2 within 14 days of this Order.

Dated this 29th day of May, 2025.

Honorable Roslyn O. Silver
Senior United States District Judge